Elayna J. Youchah, Bar No. 5837
*youchahe@jacksonlewis.com*
Peter D. Navarro, Bar No. 10168
*peter.navarro@jacksonlewis.com*
Steven C. Anderson, Bar No. 11901
*steven.anderson@jacksonlewis.com*
**JACKSON LEWIS P.C.**
3800 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
Tel: (702) 921-2460
Fax: (702) 921-2461

*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

MARKUS LEVERT and OMAR UNATING, on behalf of themselves and others similarly situated,

Plaintiffs,

v.

TRUMP RUFFIN TOWER I, LLC dba TRUMP INTERNATIONAL HOTEL LAS VEGAS; and DOES 1 through 50, inclusive,

Defendants.

Case No. 2:14-cv-01009-RCJ-CWH

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Defendant Trump Ruffin Tower I, LLC dba Trump International Hotel Las Vegas ("TIHLV") moves the Court for an order dismissing the four causes of action alleged in Plaintiffs' First Amended Collective and Class Action Complaint (the "First Amended Complaint"). Each claim rests on formulaic legal recitations and conclusory statements, which are insufficient under Fed. R. Civ. P. 8(a), at the expense of well pleaded and essential factual allegations.

This Motion is based on the papers and pleadings on file with the Court, the following memorandum of points and authorities and any argument the Court may allow.

Dated this 11th day of August, 2014.

JACKSON LEWIS P.C.

/s/ Elayna J. Youchah
Elayna J. Youchah, Bar No. 5837
Peter D. Navarro, Bar No. 10168
Steven C. Anderson, Bar No. 11901
3800 Howard Hughes Parkway, Ste. 600
Las Vegas, Nevada 89169

*Attorneys for Defendant*

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Markus Levert ("Levert") and Omar Unating ("Unating") (collectively "Plaintiffs") are former TIHLV bartenders employed between approximately 2011 through 2013. Plaintiffs generally allege they were not paid as required under federal and state wage and hour statutes and specifically that Plaintiffs were not paid for time spent changing into and out of their uniforms, retrieving and depositing funds, setting up and breaking down the bar, and amounts due and owing upon termination of employment.

These allegations form the basis of four causes of action: (1) failure to pay wages for all hours worked under 29 U.S.C. § 206(a); (2) failure to pay overtime under 29 U.S.C. § 207; (3) breach of contract; and (4) failure to pay all wages due and owing upon termination under NRS 608.140 and 608.020-.050. Each of these causes of action should be dismissed.

Under *U.S. v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487 (2d Cir. 1960), Plaintiffs' First Cause of Action fails to state a Fair Labor Standards Act ("FLSA") claim. Even assuming, as alleged, that Plaintiffs accrued approximately 2 hours and 25 minutes of daily, uncompensated "off the clock" work (which TIHLV denies), the First Amended Complaint does not allege that Plaintiffs' total pay for each workweek, divided by hours worked, equaled an amount below the

minimum wage. It is only if Plaintiffs' total compensation for hours worked falls below minimum wage that Plaintiffs have a FLSA § 206(a) claim and, for this simple reason, Plaintiffs' First Cause of Action fails as a matter of clearly established law.

Plaintiffs' Second Cause of Action, for alleged unpaid overtime due under the FLSA, also fails as a matter of law because the First Amended Complaint fails to allege, or even approximate, Plaintiffs' hours worked, weekly pay, and amount owed.

Plaintiffs' breach of contract claim (the Third Cause of Action) fails because Plaintiffs only assert common law breaches of rights established by Nevada statutes. There is no private right of action under these statutes and Plaintiff cannot create one by circumventing the statutorily created remedy and pleading a common law claim that is a de facto statutory claim. Further, even if the Court finds Plaintiffs' attempt to plead a breach of contract claim is not barred because of the express statutory remedy, their "contract" allegations do not adequately allege a common law breach of contract under the *Iqbal*/*Twombly* standard.

Finally, Plaintiffs' Fourth Cause of Action for an alleged failure to pay all money due and owing upon termination fails because there is no private right to enforce NRS 608.020-050, and even if there is, Plaintiffs' claim fails because there is no allegation that TIHLV failed to pay a final paycheck to any employee upon that employee's termination.

For each and all of these reasons, Plaintiffs' First Amended Complaint must be dismissed.

**FACTS ALLEGED IN THE FIRST AMENDED COMPLAINT**

1. TIHLV is a hotel and condominium tower located in Las Vegas, Nevada. Plaintiffs are TIHLV's former employees. Levert worked as a head bartender from approximately March 2008 to February 2014, while Unating worked as a regular bartender from approximately June 2010 to November 2013. (First Amended Compl. ¶ 8.)

2. Plaintiffs were paid an hourly rate and needed to clock in and clock out for their shifts. (*Id.* ¶ 9.) Plaintiffs allege they and the putative class members were required to undertake certain tasks pre and post shift, but were not allowed to clock in for the work. (*Id.*)

3. The alleged "off the clock" tasks include changing in and out of their work uniforms, picking up keys, setting up the bar and withdrawing, depositing and reconciling money.

(*Id.* ¶¶ 10-14.)  The First Amended Complaint further alleges that upon termination Plaintiffs were not paid amounts allegedly due and owing because they were not paid for the alleged off the clock work.  (*Id.* ¶ 17D.)

4. Based on these activities and occurrences, the putative class is categorized into the Uniform Class, Bank Class, Bartending Class and Wages Due and Owing subclass.  (*Id.* ¶ 17.)

5. The First Amended Complaint alleges four causes of action based on an alleged failure to pay wages as required under federal, state and common law.  (*Id.* ¶¶ 20-51.)

6. The first claim alleges that TIHLV violated the FLSA by failing to pay employees for all hours worked.  The allegations underlying these claims, however, do not state that Plaintiffs, or any putative class members, failed to receive at least the minimum wage for the hours worked during a corresponding workweek.  The First Amended Complaint also does not allege the wages allegedly due and owing on those allegedly unpaid hours.  In sum, the First Cause of Action is based on a single conclusory sentence: "[B]y failing to compensate Plaintiffs … for the time spent engaging in [the uncompensated tasks], Defendant failed to pay Plaintiffs and all other members of the [respective class] for all hours worked."  (*Id.* ¶ 23.)

7. The Second Cause of Action seeks payment for allegedly unpaid overtime hours worked.  However, the First Amended Complaint merely states, "Plaintiffs . . . worked over eight (8) hours in a workday and over forty (40) hours in a workweek" and "Defendant failed to pay Plaintiffs . . . overtime pay for all hours worked in excess of forty (40) hours in a week."  (*Id.* ¶¶ 9 and 31.)  The First Amended Complaint does not approximate the number of days or weeks for which overtime is allegedly owed or the amount allegedly owed.

8. The Third Cause of Action, for breach of contract, alleges that the statutory provisions of NRS 608, coupled with TIHLV's "agreement" to pay Plaintiff's a wage and to comply with applicable statutes and regulations creates an enforceable "employment agreement." (*Id.* ¶¶ 15 and 38-40.)  The First Amended Complaint further contends that TIHLV breached the agreement by failing to pay the statutorily required overtime compensation and wages.  (*Id.* ¶ 41.) The allegations, however, do not allege when the contract was supposedly formed, its terms or how and when the contract was terminated.  (*Id.* ¶¶ 66-70.)  The First Amended Complaint does

not reference a single contractual provision, attach the contract to the First Amended Complaint or contend there are individual contracts that could be discovered. Instead, Plaintiffs attach one substantive page of a TIHLV "Associate Handbook" stating that TIHLV's "policy" is compensate "non-exempt associates with overtime pay in accordance with federal, state and local regulations." (*Id.* at Exhibit A.)

9. The Fourth Cause of Action for an alleged failure to pay all amounts due and owing upon termination relies on statutes which do ***not*** provide a private right of action. Moreover, Plaintiffs do not allege that they, or any putative class members, failed to receive a final paycheck upon termination. The claim simply alleges "Defendant has failed to timely remit all wages due and owing[.]" (*Id.* ¶ 63.)

In sum, the First Amended Complaint's only well pleaded facts are that Plaintiffs are former employees (bartenders) who performed off-the-clock tasks before and after their shifts. Although cloaked as "facts," the remaining allegations are not entitled to a presumption of truth because they are conclusory or merely restatements of the claims' legal elements.

## DISCUSSION

### I. Legal Standard Under Rules 12(b)(6) And 8(a)(2)

A complaint should be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under Rule 8(a)(2), a pleading should provide a "short and plain statement of the claim showing that the pleader is entitled to relief," but ***must*** still contain enough "factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For factual matter to be accepted as true, the pleading must contain more than a formulaic recitation of claim's elements and conclusory statements. *Id.* Thus, Rule 8 "demand[s] more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Id*. at 677.

In summarizing *Twombly's* underlying analytical framework, the *Iqbal* Court identified "two working principles." *Id.* The first is that courts should not accept allegations as the truth if they are "threadbare recitals of a cause of action's elements, supported by mere conclusory

statements." *Id.* Then, after isolating the allegations that are entitled to a presumption of truth, courts should "determine whether a complaint states a plausible claim" through a context specific analysis that requires "the court to draw on its experience and common sense." *Id.*

While "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, [ ] it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. When the allegations are nothing more than formulaic recitations and conclusions couched as facts, as is the case with Plaintiffs' First Amended Complaint, the cause of action should be dismissed.

## II. Each Of Plaintiffs' Four Causes Of Action Should Be Dismissed

### A. Plaintiffs' Claim Under 29 U.S.C. 206(a) Must Be Dismissed Because It Fails To Allege That The Amount Paid Divided By Hours Worked Fell Below The Minimum Wage For Each Or Any Workweek

#### 1. The *Klinghoffer* Rule

Under 29 U.S.C. § 206(a), employees must be paid minimum wage. To that end, an employee's pay for all hours worked in a workweek must not fall below the minimum wage. *U.S. v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960). *Klinghoffer* provides that the statute's "purpose is accomplished so long as the total weekly wage paid by an employer meets the minimum weekly requirements . . . being equal to the number of hours actually worked that week multiplied by the minimum hourly statutory requirement." *Id.* Accordingly, "so long as this [ ] requirement is met, 206(a) is not violated if the parties by agreement treat all of that wage as being paid for part of the work and regard certain other work as done for nothing." *Id.*

Consistent with the *Klinghoffer* decision, every circuit that has considered the issue has held that this FLSA statute is not violated, and no cause of action lies, if the employee's rate of pay, after dividing the total weekly pay by all hours actually worked in the workweek, is at or above the minimum wage. *Dove v. Coupe*, 759 F.2d 167, 172-73 (D.C. Cir. 1985) (citation omitted); *Adair v. City of Kirkland*, 185 F.3d 1055, 1062 n. 6 (9th Cir. 1999); *U.S. Dep't of Labor v. Cole Enter., Inc.*, 62 F.3d 775, 780 (6th Cir. 1995); *Hensley v. MacMillan Bloedel Containers Inc.*, 786 F.2d 353, 357 (8th Cir. 1986); *Blankenship v. Thurston Motor Lines*, 415 F.2d 1193, 1198 (4th Cir. 1969). This is commonly referred to as the "*Klinghoffer* Rule" (sometimes referred

to herein as the "Rule"). This Rule, simply stated, establishes that if an employee receives at least the minimum wage for all hours worked in a workweek (determined by dividing all hours worked by total amount paid) there is no violation of the FLSA. *Klinghoffer*, 285 F.2d at 490; *Dove*, 759 F.2d at 172-73.

In practice the Rule is straightforward. For example, if an employee worked 20 "on the clock" hours in a given workweek and received a corresponding $240 paycheck, the hourly rate is $12.00. If, however, the employee alleged that she actually worked 22 hours, because two hours were "off the clock," the same calculation is used and the workweek's pay, $240, is divided by the total hours allegedly worked, 22, for a workweek wage of approximately $10.90. Assuming a $7.25 minimum wage, the employee would not have a wage claim under Section 206(a) of the FLSA. DEPT. OF LABOR, OPINION LETTER—FAIR LABOR STANDARDS ACT, 2008-5, MAY 20, 2008;[1] *Dove*, 759 F.2d at 172 (D.C. Circuit giving "great weight" to the Wage and Hour Division of Department of Labor's administrative interpretation).

The Ninth Circuit has endorsed the *Klinghoffer* Rule on two occasions. In *Adair v. City of Kirkland*, nearly 40 current and former police officers sued under the FLSA for alleged unpaid wages earned while attending required ten-minute briefings. 185 F.3d at 1058. While the court did not ultimately decide the issue, it stated, "'Gap time' refers to the time that is not . . . covered by the minimum wage provisions because, even though it is uncompensated, the employees are still being paid a minimum wage when their salaries are averaged across their actual time worked." *Id.* at 1062 n. 6 (citing *Klinghoffer*, 285 F.2d at 490). In *Wren v. Sletten Construction Co.*, 654 F.2d 529, 535 (9th Cir. 1981), the plaintiffs analogized FLSA Section 206 to Section 218(a), arguing that an employer could not reduce "a wage . . . which is in excess of the applicable minimum wage under this chapter[.]" *Id.* Citing the *Klinghoffer* discussion where that court rejected a similar argument, the Ninth Circuit rejected Wren's analogy. *Id.*

Perhaps *Dove* best demonstrates *Klinghoffer's* application to the case at bar. In *Dove*, the plaintiffs were limousine drivers who "received a guaranteed amount for days when they reported to work at 8:30 a.m. but received no or only short driving assignments prior to 5:00 p.m. If their

---

[1] *Available at* http://www.dol.gov/whd/opinion/FLSA/2008/2008_05_30_05_FLSA.htm.

[pay] for driving time exceeded the guarantee, they received only that pay, and no separate compensation for waiting." *Dove*, 759 F.2d at 170. The drivers claimed entitlement to a wage for all hours spent waiting for a call. *Id.* Within this context, the court, through Ruth Bader Ginsburg then writing for the D.C. Circuit, considered whether the trial court's minimum wage damage award was correct when the judge used the "work hour, not the workweek" to analyze the question. *Dove*, 759 F.2d at 171. The court rejected the lower court's analysis and held that the relevant minimum wage benchmark was the workweek, not a shorter or longer period. *Id.* at 173. The court noted that its holding was consistent with the Department of Labor's Section 206(a) interpretation and also "[i]n keeping with the view of our sister courts and the several circuits that had followed that interpretation." *Id.* at 172. Judge Ginsburg concluded that the *Klinghoffer* Rule satisfies the "purpose of the minimum wage provisions, [which] is to protect certain groups of the population from sub-standard wages[.]" *Id.* at 171 (citation omitted).

2. Plaintiffs' Claim Fails Under The *Klinghoffer* Rule

Plaintiffs' First Amended Complaint alleges that on any given work day, they could have accrued 40 minutes for "donning and doffing," 30 minutes for "banking" and 45 minutes to pick up keys and set-up the bar. (Doc 9, ¶¶ 10-12.) Plaintiffs further allege to be "entitled to compensation at their regular rate of pay or minimum wage rate, whichever is higher, for all hours actually worked." (*Id.* ¶ 21.) Then, after quoting Section 206(a), Plaintiffs conclude that they were not compensated "for the time spent engaging in the pre-shift and post-shift [ ] activities[.]" (*Id.* at ¶¶ 23-25.) Importantly, Plaintiffs do not allege that they failed to receive minimum wage when their workweek pay is divided by their actual time worked. Instead, Plaintiffs rely on conclusory statements (*i.e.*, "they were not paid for pre-shift and post-shift activities"). In fact, many of the allegations are mere legal conclusions dressed up as facts.

Under *Klinghoffer* and its progeny, however, the only question before the Court when assessing Plaintiffs' First Cause of Action is whether an employee received at least the minimum wage for all hours worked after dividing the workweek's pay by the total hours actually worked.

Simply alleging that on a given day an employee engaged in "off the clock" work, and is therefore entitled to additional compensation, does not state a claim. *See Dove*, 759 F.2d at 171-72.

Plaintiffs have not alleged that the numbers of hours worked in a given workweek, when compared to the pay received, resulted in an amount that fell below the minimum wage. Thus, Plaintiffs' First Cause of Action does not allege facts sufficient to infer a plausible FLSA minimum wage violation. As such, Plaintiffs' First Cause of Action should be dismissed. *Dove*, 759 F.2d at 172-73.

### B. Plaintiffs' Claim Under The FLSA's Overtime Statute Fails Because The First Amended Complaint Does Not Allege, Or Approximate, The Number Of Overtime Hours Worked Or The Amount Supposedly Owed

Under 29 U.S.C. § 207, a non-exempt employee should receive one-and-one-half times the regular pay rate for hours worked in excess of 40 during a workweek. To adequately plead a violation of this statute, however, an employee must allege that she worked more than 40 hours in a given week and must describe "a mechanism by which the FLSA may have been violated." *Pruell v. Caritas Christi*, 678 F.3d 10, 14 (1st Cir. 2010) ("arguably, once the complaint was amended to allege regular work by plaintiffs and others of more than 40 hours a week, it now described a mechanism by which the FLSA may have been violated [ ].") Standing without additional information, such as examples or estimates of the amount owed, the "work in excess of 40 hours in a week" allegations are insufficient to survive the *Iqbal/Twombly* standard. *Id.* at 13.

In *Pruell*, the First Circuit considered an appeal of the lower court's order of dismissal, which found the pleading deficient for failing to allege, or even approximate, the plaintiffs' weekly wages, hours worked, and whether the plaintiffs worked more than 40 hours in a week. *Id.* at 12. Even after amendment, the allegations that, "[t]hroughout their employment with defendants, Plaintiffs regularly worked over 40 hours in a week and were not compensated for such time," were still inadequate under *Iqbal/Twombly*. *Id.* at 13.

On appeal, the First Circuit undertook the *Iqbal/Twombly* "context specific task" of drawing "on its judicial experience and common sense" and affirmed the lower court. *Id.* at 15. The court held that while the alleged facts were consistent with an overtime pay violation, they

still did not plausibly establish the alleged violations. The court noted that while the amended complaint added the allegation "plaintiffs worked over 40 hours in a week," the phrase did not do much to help plaintiff because "this phrase is one of those borderline phrases. As . . . explained in [a previous case] some allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory and the factual." *Id.* (citation omitted). In other words, "[s]tanding alone, the quoted language is little more than a paraphrase of the statute." *Id.*

The court then considered whether the amended complaint had other well pleaded facts, and noted, "The amended complaint does not provide examples (let alone estimates as to the amounts) of such unpaid time for either plaintiff[.]" *Id.* at 14. The court further considered the amended complaint in the context of class actions, noting that attorneys had "some incentive to keep the claims unspecific to achieve the largest possible class." *Id.* This, however, is no excuse for inadequate factual allegations, as "such lawsuits still require at the outset a viable named plaintiff with a plausible claim." *Id.* Thus, the court concluded that, even as amended, the complaint failed to state a claim for an FLSA overtime violation. *Id.* at 15.

While *Pruell* appears to be the first court to apply *Iqbal/*Twombly to an FLSA overtime case, other courts have adopted its reasoning.[2] In *Dejesus v. HF Mgmt Services*, the Second Circuit analyzed and approved *Pruell's* reasoning. 726 F.3d 85, 89 (2d Cir. 2013). There, the plaintiff alleged she was a wage-earning employee who worked more than 40 hours per week for "some or all weeks" of her employment, but failed to receive proper overtime compensation. *Id.* at 86-87. The district court dismissed her complaint because she did not "set forth . . . any approximation of the number of paid overtime hours worked, or her rate of pay, or any approximation of the amount of wages due." *Id.* at 87. Thereafter, the Second Circuit affirmed

---

[2] *See, e.g., Dejesus v. HF Mgmt Services*, 726 F.3d 85, 89 (2d Cir. 2013); *Dyer v. Lara's Trucks, Inc.*, 2013 U.S. Dist. LEXIS 21906 *8 (N.D. Ga. Feb. 19, 2013) (citing *Dejesus* and stating, "The Court finds the reasoning of those courts that have found plaintiffs to be accountable to the dictates of Rule 8(a)(2), even while pleading FLSA collective actions, to be more persuasive."); *Weigle v. FedEx Ground Package System, Inc.*, No. 06-CV-1330 JLS, 2010 U.S. Dist. LEXIS 120475, at *4 (S.D. Cal. Nov. 15, 2010) (dismissing overtime claims pursuant to Rule 12(b)(6), finding plaintiffs' mere allegations that defendants "required [them] to work overtime without lawful compensation" insufficient).

the lower court's ruling. *Id.* at 91. The court recited several of Dejesus's "allegations" and stated that her "claim is similar to one that the First Circuit recently confronted [in *Pruell*]." *Id.* at 89. After summarizing the *Pruell* Court's rationale, the *Dejusus* Court wrote, "The First Circuit's reasoning is persuasive. Dejesus's complaint tracked the statutory language of the FLSA, lifting its numbers and rehashing its formulation, but alleging no particular facts sufficient to raise a plausible inference of an FLSA overtime violation." *Id*. Accordingly, the court concluded that the plaintiff's "FLSA and [state law] claims were . . . inadequate and properly dismissed." *Id.*

Here, Plaintiffs' Second Cause of Action, alleging a violation of federal overtime requirements, should be dismissed because, like *Pruell* and *Dejesus*, Plaintiffs' First Amended Complaint fails to allege sufficient facts to state this claim. The First Amended Complaint contains nothing more than conclusions and an unadorned allegation that the "defendant-unlawfully-harmed-me." *Iqbal,* 556 U.S. at 57. They merely claim to have performed "off the clock" or other work "in excess of forty (40) hours" for which "Plaintiffs and the [various] Class Members" were allegedly not appropriately compensated, but nothing more. (Doc 9, ¶¶ 29-31.) While the First Amended Complaint has added a paragraph stating that, "Plaintiffs and all similarly situated and typical employees worked . . . over forty (40) hours in a workweek and did not receive" statutory overtime compensation, such an addition is insufficient to satisfy *Iqbal/Twombly*. In fact, this is exactly what was alleged in *Pruell*, leading that court to conclude that such statements were "little more than a paraphrase of the statute." 678 F.3d at 14.

Plaintiffs have not attempted to approximate the overtime hours or provide examples of times where they worked over 40 hours in a week or attempted to approximate or give examples of money supposedly due. Given that allegations such as "plaintiff worked in excess of 40 hours in a week but was not paid overtime" are "so threadbare or speculative that they fail to cross the line between the conclusory and the factual," Plaintiffs' Second Cause of Action fails to state an FLSA overtime violation and should be dismissed. *Pruell*, 678 F.3d at 14.

**C.   The Breach of Contract Claim Fails Because They Cannot Turn Their Statutory Rights For Which There Is No Private Right of Action, Into A Common Law Claim And, Even If They Could, The Allegations Are Insufficient Under *Iqbal/Twombly***

1.   <u>To The Extent Plaintiffs Allege A Breach Of Contract Pursuant To NRS 608.100, The Claim Fails Because There Is No Private Right Of Action</u>

Under NRS 608.100, "It is unlawful for any employer to . . . pay a lower wage, salary, or compensation to an employee than the amount that the employer is required to pay to the employee by virtue of any statute or regulation or ***by contract between the employer and the employee***."  (Emphasis added.)  Here, Plaintiffs seek to turn their statutory rights into a common law breach of contract claim to avoid the undisputed law holding that there is no private right of action under NRS 608.100.  *Baldonado v. Wynn Las Vegas, LLC*, 124 Nev. 951, 958, 194 P.3d. 96, 100 (2008); *Lucas v. Bell Trans*, 2009 U.S. Dist. LEXIS 72549 *11 (D. Nev. June 24, 2009).

In sum, Plaintiffs' Third Cause of Action asserts that TIHLV has an agreement with each Plaintiff, and each putative class member, to pay these individuals an agreed upon hourly rate in accordance with state and federal law, which agreement was breached when TIHLV failed to do so by allegedly failing to pay for time worked off the clock at the appropriate straight and overtime rates.  (First Amended Compl. ¶¶ 15, 38-40.)  Plaintiffs further argue that the Employee Handbook, of which they attach two pages one of which is a table of contents, promises to pay employees overtime in accordance with law.  (*Id.* ¶ 40.)  These allegations do nothing more than offer the Court the contention that TIHLV allegedly breached an agreement requiring it to follow Nevada and federal wage hour law.

As explained in *Descutner*, "[e]mployers and employees do not arrange labor statutes; they arrange their contractual relationships."  *Descutner*, 2012 U.S. Dist. LEXIS 156656 *11.  In summary, the word "terms" [used in NRS 608.140] indicates negotiated terms, as per a contract, not externally imposed standards, as per a statute."  *Id.* As a result of this holding, *Descutner* dismissed the plaintiff's NRS 608.018/608.140 claim as failing to state a private right of action. *Id.* at *14-15.  And, like 608.018, NRS 608.100, and 608.016 provide no private rate of action. *Id.* at 14-15; *Gamble v. Boyd Gaming Corp.*, 2014 U.S. Dist. LEXIS 78069 *10-11 (D. Nev. June 6, 2014); *Baldonado*, 124 Nev. at 968-969, 194 P.3d at 107.  Given that these statutes do not

provide a private right of action, the law cannot be that an employee can repackage them into a common law breach of contract claim that provides no terms or rights beyond what the statutes provide. Permitting Plaintiffs to proceed with their breach of contract claim would be to impermissibly allow them to circumvent the legislature and the law.

In sum, Plaintiffs fail to allege a contract outside of claims asserted as identified in NRS 608.100, which claims must be enforced before the Labor Commissioner. *Baldonado*, 124 Nev. at 968-969, 194 P.3d at 107. Indeed, to allow Plaintiffs' common law breach of contact claim to proceed, which is nothing more than an additional legal theory to recover unpaid wages and overtime that is recoverable under state law through Labor Commissioner proceeding, would upset the balance established by the Nevada Legislature that has established an "adequate administrative enforcement mechanism" through which Plaintiffs may seek redress for their state law wage claims. *Flores v. Albertson's*, 2003 U.S. Dist. LEXIS 26857 *18-20 (C.D. Cal. Dec. 8, 2003); *Baldonado*, 124 Nev. at 966 194 P.3d at 106.

For this reason alone, Plaintiffs' breach of contract claim fails.

2. Plaintiffs Common Law Breach Of Contract Claim Fails Under *Iqbal/Twombly*

Plaintiffs' breach of contract claim also fails because it is based on legal element recitals and conclusory statements trying to pass as well pled facts. Courts should not presume that these allegations are true. *Iqbal*, 556 U.S. at 677-79. Specifically, the totality of Plaintiffs' First Amended Complaint alleges that TIHLV employs employees who it has agreed to pay in accordance with law, employees agreed to work for those wages, and that TIHLV has a policy to pay overtime in accordance with federal and state laws and regulations. (First Amended Compl. ¶ 15 and Exhibit A thereto.) On this basis, Plaintiffs' alleged enforceable agreement would apply to every employer-employee relationship in the state.[3]

Unfortunately for Plaintiffs, a common law breach of contract claim requires, first and foremost, that the agreement at issue is a memorialization of specifically bargained for rights and

---

[3] Of course, the Employee Handbook adds nothing to the analysis because an employer may change the terms of an employee handbook at any time. *Baldonado*, 124 Nev. at 966, 194 P.3d at 106

expectations arrived at through a meeting of the minds. *Descutner,* 2012 U.S. Dist. LEXIS 156656 *10-11. Accordingly, contracts have definite terms. *See Saini v. Int'l Gaming Tech.*, 434 F. Sup. 2d 913 (D. Nev. 2006). Here, Plaintiffs do not allege when the contracts were formed, the contracts' supposed terms, how the contracts could be terminated, or what pay was to be given for a certain corresponding service. Neither do Plaintiffs state their hourly rates or specify the corresponding services rendered.

This First Amended Complaint, with its breach of contract allegations in particular, is the quintessential example of what the *Iqbal/Twombly* standard was designed to prevent. It contains nothing more than a paraphrase of a breach of contract's legal elements and a bald claim that TIHLV's conduct has harmed Plaintiffs. Accordingly, the Third Cause of Action should be dismissed. *Iqbal*, 556 U.S. at 678-679; *see Kohonen v. Sentinel Ins., Ltd.*, 2014 U.S. Dist. LEXIS 38321 (D. Nev. March 24, 2014).

**D. Plaintiffs' Claim Under NRS 608.020-.050 Fails As A Matter Of Law**

Plaintiffs' Fourth Cause of Action for wages due and owing under NRS 608.020 – .050 fails as a matter of law because: (1) Plaintiffs must bring this claim before the Nevada Labor Commissioner; (2) the plain language of the statute demonstrates it is not applicable to Plaintiffs' class action claims, and (3) overtime is not "wages" rendering 608.050 inapplicable to claims for alleged unpaid overtime.

1. There Is No Private Right Of Action Under NRS 608.020 – .050

Plaintiffs' Fourth Cause of Action presumes that NRS 608.140 authorizes private causes of actions for alleged penalties under NRS 608.050 that, according to Plaintiffs, should attach based on an employer's alleged failure to remit wages and overtime compensation supposedly due because of wage-hour violations raised in class action litigation asserted under state law. However, NRS 608.140, authorizes no such thing. Indeed, if that was the case, the Legislature's entrustment of enforcement authority to the Labor Commissioner would be meaningless. *Gamble v. Boyd Gaming Corp.*, 2014 U.S. Dist. LEXIS 78069 *10-11 (D. Nev. June 6, 2014) (holding

NRS 608.140 does not imply a private right of action under NRS 608.020-.050) (citing *Descutner v. Newmont USA Ltd*., 2012 U.S. Dist. LEXIS 156656 at *6-7 (D. Nev. Nov. 1, 2012)) (emphasis added).

In fact, the Nevada Supreme Court has made clear that, unless otherwise specified, the Labor Commissioner is entrusted with enforcing NRS 608.005 – .195. *Baldonado*, 194 P.3d at 104. The wage statutes at issue, 608.020 – .050, do not "otherwise specify" that someone other than the Labor Commissioner has authority to enforce these penalty statutes. As a consequence, Plaintiffs do not have a private right of action, but must bring their claim for penalties arising under NRS 608.020 – .050 before the Labor Commissioner and Plaintiffs' Fourth Cause of Action must be dismissed.

*a. Baldonado And The Wage Statutes*

In 2008, the Nevada Supreme Court decided *Baldonado v. Wynn Las Vegas, LLC*. There, the court held that the plaintiffs had no private right of action to enforce NRS 608.100, 608.120 and 608.160. 124 Nev. at 959, 194 P.3d. at 101. Specifically, the *Baldinado* Court stated that these statutes contain no express private right of action and then analyzed whether these statutes could be read to contain an implied private right. Analyzing whether an implied private right of action is properly inferred, the *Baldonado* Court focused on two considerations: whether the legislative history indicated intent to create or to deny a private remedy, and whether "implying such a remedy is consistent with the underlying purposes of the legislative [sch]eme." *Id.* at 958-59, 194 P.3d at 101. These factors overwhelmingly demonstrated that there is "no private cause of action to enforce NRS 608.160, NRS 608.100, or NRS 613.120." *Id.*

To begin its analysis, the court stated, "[t]he absence of an express provision providing for a private cause of action . . . strongly suggests that the Legislature did not intend to create a privately enforceable judicial remedy." *Id*. Moreover, the Legislature has affirmatively "entrusted the labor laws' enforcement to the Labor Commissioner, unless otherwise specified." *Id.* at 961, 194 P.3d at 102. This fact "weighs heavily against finding any intent to create a private remedy." *Id.* at 961, 194 P.3d at 102-03. The court then determined that no private right existed under NRS 608.100, 608.120 1608.160 because, coupled with the clear legislative intent,

the statutes provide an "adequate administrative remedy" through the Nevada Labor Commissioner. *Id.* at 962, 194 P.3d at 103. In fact, one of the Labor Commissioner's "significant" enforcement responsibilities is to "resolv[e] labor law complaints." *Id.* at 963, 194 P.3d at 104. "In this manner, the Labor Commissioner's expertise is optimized, and the parties then have an opportunity to petition the district court for judicial review and, ultimately, appeal to this court." *Id*. Accordingly, "[a]s no private remedy is implied under NRS 608.160, appellants had no right to obtain relief in the district court under that statute." *Id.* at 963, 194 P.3d at 104-05.

*b. The Legislative History And Statutory Scheme Demonstrate That Baldonado's Rationale Applies Equally To The Other Wage Statutes*

In dicta, many argue that *Baldonado* court has implied that a private right of action to enforce 608.020 – .050 exists by virtue of the language found in NRS 608.140. *Id.* at 964 n. 33, 194 P.3d at 104 n. 33 (emphasis added). The *Baldonado* court, however, was not presented with the specific question of whether NRS 608.140 applied any statute other than NRS 608.100, 608.120 and 608.160. Indeed, *Baldonodo* makes clear that the private right that may exist is limited to claims for "*wages unpaid and due*." *Id.* However, NRS 608.020.-050 are *penalty* statutes and do not provide for the recoupment of any wages of any kind. In fact, NRS 608.020-.050 provides only for an award of penalties in limited circumstances and, like the analysis applicable to NRS 608.100, 608.120 and 608.160, no express or implied private right to enforce these claims exist.

Indeed, Nevada's federal district courts that have applied *Baldonado's* reasoning to the waiting time provisions of NRS 608.020-.050 have determined that there is no private right of action. *See Gamble v. Boyd Gaming Corp.*, 2014 U.S. Dist. LEXIS 78069 *10-11 (D. Nev. June 6, 2014) (citing *Descutner v. Newmont USA Ltd.*, 2012 U.S. Dist. LEXIS 156656 at *6-7 (D. Nev. Nov. 1, 2012). NRS 608.180 entrusts the Labor Commissioner with enforcing each and all of these statutes. Thus, *Baldonado's* legislative history and statutory scheme analysis, and ultimately its holding, should apply equally to Plaintiffs' causes of action under NRS 608.020 – .050. Accordingly, Plaintiffs' Fourth Cause of Action should be dismissed.

2. <u>Plaintiffs Do Not Allege That They Failed To Receive Their Final Paychecks After Their Employment With TIHLV Terminated</u>

As a basic proposition, a statute "must be construed as a whole and not be read in a way that would render words or phrases superfluous or make a provision nugatory." *Barrick Goldstrike Mine v. Peterson*, 116 Nev. 541, 546, 2 P.3d 850, 853 (Nev. 2000) (quoting *Charlie Brown Constr. Co. v. Boulder City*, 106 Nev. 497, 502, 797 P.2d 946, 949 (Nev. 1990)). Moreover, a statute's text must be understood according to its plain meaning at the time the statute was enacted. *See Baldonado v. Wynn Las Vegas, LLC*, 124 Nev. 951, 959, 194 P.3d. 96, 101 (2008); *see also Pohlabel*, 268 P.3d at 1269 (legislative intent should be derived from the statute's actual language, which must be given the meaning it would have had at the time the statute was enacted).

The "Waiting Time Provisions" of NRS 608.020 – .050 are unambiguous. They address situations where an employer fails to pay an employee the undisputed amount owed as of the separation date. Under NRS 608.020 and .030, a former employee is entitled to "the wages and compensation earned and unpaid at the time of such discharge shall become due and payable immediately." Under NRS 608.040, an employee may be entitled to penalties if an employer violated the payment requirements of 608.020 or .030. NRS 608.050 further provides for remedies for failure to promptly pay a recently terminated employee the "wages or salary ***then due*** . . . ***at the time the same becomes due and owing*.**" (Emphasis added.)

This statutory scheme read together, makes clear that it is an employer's failure to pay amounts ***actually due***, not wage amounts that ***might be due*** under a future judgment, which results in penalties. This is because the goal of NRS 608.020 – .050 is to ensure that terminated employees are promptly paid for the undisputed hours they worked during their final pay period. *See Orquiza v. Walldesign, Inc.*, No. 2:11-CV-1374-JCM-CWH, 2012 U.S. Dist. LEXIS 84458,

at *14-15 (D. Nev. June 19, 2012) (analyzing and dismissing claim under NRS 608.040 and 608.050). Nothing in these statutes suggests they apply to disputed wages or are intended to create a liquidated damages provision such as that found in Section 216(b) the FLSA.[4]

Plaintiffs' proposed application of NRS 608.020-.050 is facially inconsistent with the statutes' plain language discussed above. That is, Plaintiffs seek to construe these statutes as providing the equivalent of liquidated damages for every violations of NRS 608.016 and 608.018, which is simply not supported by the language or intent of the statutes. Yet Plaintiffs' interpretation of NRS 608.020 – .050 would allow a former employee to wait years before bringing a claim for an alleged violation of Nevada wage statutes, and automatically be entitled to the maximum waiting time penalties under NRS 608.040 even if an employer raises a good faith dispute, but is ultimately found by a court to owe some amount and timely pays the judgment. Plaintiffs ask the Court to reach the absurd result of penalizing the employer in every situation where there is a dispute about amounts due. The statutes do not contemplate this result. Instead, NRS 608.020 – 608.050 are clearly intended to apply to wages "due" and "owing" and not in dispute. For this reason, Plaintiffs' claims for penalties under the Waiting Time Provisions should be dismissed.

3. Waiting Time Penalties Do Not Apply To Overtime Compensation

Plaintiffs also seek to impose waiting time penalties on alleged unpaid overtime compensation. Under NRS 608.050, employers may be liable for a penalty if a terminated employee is not paid "the amount of any ***wages or salary*** then due them." (Emphasis added.) Overtime compensation, however, is not a wage under Nevada law. "Wages" are defined as the "amount which an employer agrees to pay an employee for the time the employee has worked[.]" NRS 608.012(1). Thus, while wages are based on the amount the employer agrees to pay,

---

4 That is, Section 216(b) of the FLSA states that "[a]ny employer who violates the provisions of section 206 [minimum wage] or section 207 [overtime] of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, *and in an additional equal amount as liquidated damages*." 29 U.S.C. § 216(b) (emphasis added). Therefore, under the FLSA statutory scheme, there is a direct connection between its minimum wage and overtime requirements, Sections 206 and 207, respectively, and its damages provision which specifically provides for liquidated damages, Section 216.

"overtime is a creature of statute, and is separate and distinct" from wages. *Evans v. Wal-Mart Stores, Inc.*, Case No. 2:10-cv-1224-JCM-VCF, 2014 WL 298632 *5 (D. Nev. Jan. 24, 2014) (the court stated, the penalty "necessarily does not include the the statutorily-created overtime rates"); *see also Orquiza v. Walldesign, Inc.*, 2012 WL 2327685 (D. Nev. June 19, 2012) (holding that waiting time penalties do not apply to overtime); *Lucas v. Bell Trans*, 2009 U.S. Dist. LEXIS 72549 *15 (D. Nev. June 24, 2009). Accordingly, Plaintiffs' claim for waiting time penalties with respect to overtime compensation should be dismissed.

**CONCLUSION**

Each of Plaintiffs' claims fail under Fed. R. Civ. P. 12(b)(6). As a consequence, the First Amended Complaint should be dismissed in its entirety.

Dated this 11th day of August, 2014.

JACKSON LEWIS P.C.

/s/ Elayna J. Youchah
Elayna J. Youchah, Bar No. 5837
Peter D. Navarro, Bar No. 10168
Steven C. Anderson, Bar No. 11901
3800 Howard Hughes Parkway, Ste. 600
Las Vegas, Nevada 89169

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Jackson Lewis P.C. and that on this 11th day of August, 2014, I caused to be sent via the Court's ECF Filing, a true and correct copy of the above and foregoing **DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**, properly addressed to the following:

Mark R. Thierman
Josh Buck
Thierman Law Firm, P.C.
7287 Lakeside Drive
Reno, Nevada 89511

*Attorneys for Plaintiffs*

/s/ Emily Santiago
Employee of Jackson Lewis P.C.